## Reuff-Griffin Decorating Company v. Wilkes.

(Decided January 30, 1917.)

Appeal from Jefferson Circuit Court
(Common Pleas Division, No. 3).

1. Limitation of Actions—Suspension of Kentucky Statutes.—Under the provisions of section 2532, Kentucky Statutes, the running of the statute of limitations will be suspended by any obstruction to the prosecution of the action which may be created by indirect means employed by the defendant during the existence of such obstruction, but to constitute the obstruction the defendant must be guilty of some fraudulent concealment or other conduct calculated to disarm the plaintiff and to deceive him as to his rights and to cause him to refrain from filing his suit when he otherwise desired to and would have done so but for the obstructive acts of the defendant.

2.  Limitation of Actions—Suspension of.—Mere ignorance of the facts on the part of plaintiff with a declination of the defendant to inform him, when the defendant is under no confidential relations of trust or otherwise requiring him to furnish such information, will constitute such obstruction as will prevent the running of the statute, nor will a mere promise by the defendant to continue to pay the plaintiff his wages constitute such obstruction, unless the promise assumes the form of a binding obligation supported by sufficient cause.

3.  Limitation of Actions—Obstruction to Running of Statute.—Plaintiff was employed by G., who was the owner and operator of a business in his individual name, and who was a partner in a similar business being conducted by a firm which was later incorporated in the partnership name and plaintiff worked in the business of the partnership and that of the corporation after it was formed and was injured. The fact that he claimed not to know which one of the two concerns was his employer is not sufficient to constitute an obstruction to the running of the statute of limitations as is contemplated by section 2532 of the statutes.

FURLONG, WOODBURY & FURLONG for appellant.

BLAKEY, QUINN & LEWIS for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The only question on this appeal which we deem it necessary to consider is whether the limitation of one year for the bringing of an action for the recovery of damages on account of personal injury, as provided by section 2516 of the Kentucky Statutes, was under the facts appearing of record "obstructed" within the meaning of section 2532 of the same statutes so as to enable the appellee, who was plaintiff below, to maintain this action against appellant, who was defendant below, and which action was not brought until twenty-nine days after the expiration of one year from the time he sustained the injuries for which he sued.

Plaintiff was injured by the turning over of a tower wagon upon which he was at work in adjusting and repairing some decorating lights on Market Street, between 4th and 5th, in the city of Louisville, which had been constructed and agreed to be maintained by defendant during the Perry Centennial Celebration, 1913. It occurred between seven and eight o'clock p. m., on September 30 of that year, and it is claimed in the petition that the wagon was defectively constructed, and was, therefore, an unsafe place provided by the defendant for the plaintiff in performing his work, and

because of its defective and unsafe condition it was caused to and did turn over and produced the injuries resulting in his damage. The suit was filed on October 29, 1914, and one of the defenses relied upon is the limitation provided by the first section of the statute before mentioned.

The reply attempted to avoid the limitation thus pleaded by setting up facts which plaintiff contends constituted an obstruction to the running of the statute for more than twenty-nine days, and that he was entitled, under the statute, to deduct the time covered by the obstruction from the limitation period provided for the bringing of such actions. Section 2532, under which this insistence is made, reads:

"When a cause of action mentioned in the third article of this chapter accrues against a resident of this state, and he, by departing therefrom or by absconding or concealing himself, or by any other indirect means obstructs the prosecution of the action, the time of the continuance of such absence from the state, or obstruction, shall not be computed as any part of the period within which the action may be commenced. But this saving shall not prevent the limitation from operating in favor of any other person not so acting, whether he is a necessary party to the action or not."

Whether there exists such an obstruction as would toll the limitation statute must be ascertained from the facts as disclosed by the testimony. In so far as they are pertinent to this point they are substantially as follows:

Previous to September 18, 1913, J. T. Griffin was engaged in business in the city of Louisville, which was conducted in the name of Falls City Electric Company, and which business consisted in handling electric fixtures and apparatus which perhaps may have included repair work in that line of business. Before that day, William J. Reuff and J. T. Griffin had formed a partnership under the style and firm name of Reuff-Griffin Decorating Company, with an office on Market Street, between 4th and 5th. This partnership appears to have been formed for the purpose of procuring the contract for the street decorating work for the Perry Centennial Celebration to be held in the city of Louisville in the fall of 1913. The firm was awarded that contract and shortly afterward a corporation was formed bearing

the same name of that partnership and in which corporation Reuff and Griffin were the principal stockholders, the former being made secretary and treasurer and the latter president. A few days before the incorporation the plaintiff applied to Griffin for employment, which was given him, and he was put to the work of carrying out the decorating contract for the centennial celebration, and at which he continued to work until he was injured. When plaintiff was employed and first began work the Reuff-Griffin Decorating Company was only a partnership composed of the members hereinbefore stated, but it was incorporated in the same name before the plaintiff was injured. The business of Griffin, conducted in the name of Falls City Electric Company, continued, but neither the partnership of Reuff-Griffin Decorating Company nor the corporation of the same name had any interest in that business.

As to what occurred at the time the plaintiff was employed is stated by him to be: "I asked him (Griffin) for employment; asked him if he was doing the decorating for the Falls City Electric Company, and he said he was; said he was the proprietor of it. I asked him for work, and he told me to report at his office at 5th Street, between Market and Jefferson."

Directly after that the plaintiff was employed and worked, as hereinbefore stated, and received his pay at the office of the defendant on Market Street and not at the office of Falls City Electric Company on 5th Street. Upon this point, Griffin, when asked if he had represented to the plaintiff at the time of the employment that he was being employed by the Falls City Electric Company said: "No, there was no occasion for me to represent myself. Mr. Wilkes asked me for a job and I told him certainly, I needed a lineman and would give him work." He then proceeds to explain why the contract for the decorating was taken by a concern other than the Falls City Electric Company, which, as he claims, was because the latter employed non-union men, and in carrying out the decorating contract the authorities managing the centennial insisted on the use of union labor.

The next morning after the accident, Griffin, in company with Reuff, called upon the plaintiff at his mother's home, to which he had been carried, and at which he re-

sided, and left him $9.00, which plaintiff insisted on not accepting, but, according to his statement, it was left there on the bed and was presumably appropriated by him. On that occasion plaintiff says that Griffin told him this:

"Well, he told me that he would carry me on my regular pay-roll; carry me on the regular pay-roll until I got well or able to go to work, and when they got ready to leave the house he got some money from Mr. Reuff and made up $9.00 between them. I told them that I didn't need any money that morning. They insisted on my taking it," etc.

This conversation as detailed by plaintiff with reference to keeping him on the pay-roll is denied by both Griffin and Reuff, but if it was a controlling factor the plaintiff's testimony would be sufficient to justify the submission of the issue to the jury. Neither Griffin nor Reuff saw the plaintiff afterward until November 8, 1913, when he appeared at the office of the defendant on Market Street, at which time he was given a check for $25.00, upon which was printed the name of the defendant, showing that it was incorporated, as well as its business card, and signed by William J. Reuff, secretary and treasurer. This check was endorsed and cashed by the plaintiff. The plaintiff, continued to make visits to the office of the defendant, over which there was and had been all the time, according to the great preponderance of the proof, a large sign which was illuminated at night, and which sign bore the name of the defendant. Somewhere between the 10th and 15th of December, plaintiff claims that he was told that defendant could not pay him any more money, and on the 19th day of December he employed attorneys to bring this suit. Some negotiations occurred between his attorneys and Griffin looking to a settlement of the claim, but nothing was said by the latter upon any occasion calculated to in any way mislead or deceive either plaintiff or his attorneys as to the true and correct employer of plaintiff; the only objection to a settlement being that if there was any negligence at all producing the injuries to plaintiff, it was that of his fellow-servant, and that he was, therefore, not entitled to recover.

After some weeks of negotiations to settle the claim, and about the middle of January, a suit was filed by plaintiff against the Falls City Electric Company, and

on the next day after the service of the summons upon Griffin, he and Reuff went to the plaintiff's home and there informed him that he had sued the wrong defendant, giving him at the same time the name of Reuff-Griffin Decorating Company as his employer and the one whom he should sue. This is admitted by plaintiff and his mother. Within a day or so after that the plaintiff informed his attorneys of the facts as given him by Griffin, as is testified to both by plaintiff and his attorneys. Notwithstanding this, they persisted in prosecuting the suit against the Falls City Electric Company, and during its trial, which was had some time in October, 1914, the facts hereinbefore recited were made manifest and that suit was dismissed, followed by this one. So, the question is: do the recited facts constitute such obstruction to the bringing of the suit as is contemplated by the section of the statute, *supra?*

The obstruction insisted on by counsel for plaintiff is of a two-fold nature: (1) the fraudulent concealment of the one by whom plaintiff was employed; and, (2) an agreement to continue the payment of plaintiff's wages. Considering these in the order mentioned, it might well be doubted, under the testimony, whether the plaintiff was ignorant of the name of the person for whom he was working and in whose employ he was engaged at the time of the injury. He received his pay throughout his employment at the office of the appellant, and there is no motive anywhere shown for the concealment of the name of his employer, nor is there any evidence of any such concealment. It may be that because Griffin, through whom the employment was made, was engaged in an individual business similar in some respects to that of appellant, that plaintiff believed he was employed by Griffin alone, but the slightest diligence on his part would have dispelled such an impression, and there is nothing to show that either Griffin or any one connected with the appellant, did anything to foster or encourage any such impression or to prevent it, if existing, from being removed. If the circumstances and conditions could by any possibility be construed into a concealment of the facts, it is not such a concealment as will amount to fraud so as to constitute the "obstruction" to the limitation as contemplated by the statute under consideration. As stated in 25 Cyc. 1212, in treating upon this precise point:

"The rule is uniformly established that mere ignorance of the facts which constitute the cause of action will not postpone the operation of the statute of limitation, but the statute will run from the time the cause of action first accrued, notwithstanding such ignorance. The reason of the rule seems to be that in such cases ignorance is the result of want of diligence, and the party cannot thus take advantage of his own fault." And again, on page 1222, it is said:

"Generally, however, it may be stated that if a fact exists from which a cause of action arises which is not peculiarly within the knowledge of the party from whom the right is to be received, a fact which may be ascertained by inquiry or diligence, there is no duty on. the debtor to give notice of the fact, and mere ignorance thereof on the part of the creditor will not prevent the running of the statute."

Closely connected with the text the further rule is laid down in substance that if the concealed fact is exclusively or peculiarly within the knowledge of the party to be charged "and there is a relation of trust or confidence between the parties by reason of which it is the duty of the one to disclose to the other the fact or facts upon which the cause of action or the immediate right to prosecute a particular remedy matures or arises, the omission to disclose what it is the special duty of the defendant to disclose is a fraudulent concealment."

Clearly in this case nothing appears to create the apprehension on the part of appellant or any of its officers that plaintiff was laboring under a misapprehension as to who was his employer, nor was any trust relation existing between the parties calling for a modification of the rule as found in the last quotation. The slightest diligence on the part of the plaintiff would have disclosed to him that the appellant was the person who had him employed and for whom he was working at the time he was injured. The "indirect means" by which the "obstruction" of the statute is permitted must consist of some act or conduct whereby the plaintiff was misled or deceived and because of which he was prevented from proceeding with his suit when he desired to do so, and but for which he would have done so. It was held by this court, in the case of Hopperton v. Louisville and Nashville Railroad Company, 17 Ky.

Law Reporter 1322, that misrepresentation made by plaintiff to the defendant as to the time constituting the bar would not obstruct the running of the statute. In the opinion, the court said:

"He had no right to rely on the statement of the defendant, but should have consulted an attorney or someone whose interest was not averse to his in regard to the subject matter. Ignorance of the statute of limitation cannot be pleaded as a defense even if wrongly advised by counsel."

In the case of Perry v. Elgin, 15 Ky. Law Reporter 855, where an analogous principle was under consideration, this court said:

"Nor will mere ignorance of her rights on the part of the appellant toll the statute. There is no proof whatever showing any fraud on the part of appellee."

If, in this case the plaintiff had been bona fide in doubt as to the name of his employer, and had applied to Griffin or any authorized agent of the appellant for the truth in regard to the matter and had been misinformed and misdirected as to the facts, there might have been room for him to insist upon the practice of such "indirect means" and such fraud as would constitute a valid obstruction to the running of the limitation statute.

The character of means employed that will create such an obstruction as is contemplated by the statute is well defined in the case of Coleman v. Walker, 3 Met. 65. In considering a former statute wherein the words "defeat or obstruct" are used, this court in that opinion said:

"The words 'defeat or obstruct,' as used in the act, signify the performance of some act on the part of the sureties, which will amount to a prevention or hindrance of a suit in opposition to the will and rights of the creditor, such as he cannot with reasonable diligence overcome. The terms import resistance and obstruction to his rights, and unless the acts complained of are, in point of fact, such as would hinder and prevent him from bringing the suit, notwithstanding his desire to do so, they cannot properly be said 'to defeat or obstruct' such suit."

The similarity of meaning of the different statutes upon this subject was recognized in the case of Reed v. Hamilton, 92 Ky. 619, wherein the Coleman case is re-

ferred to and the rule just quoted is again adopted. Other cases from this court found in the two cases referred to and in the notes to the section of the statute under consideration fully sustain us in holding that there exists in this case no concealment or fraud of any kind having the remotest tendency to create an obstruction to the running of the statute as contemplated by section 2532.

Turning now to the second insistence of counsel that defendant through its president, Griffin, agreed to keep plaintiff on the pay-roll, and that this, under the rule laid down in the cases of Chesapeake and Northern Railroad v. Speakman, 114 Ky. 628; Hopperton v. L. & N. R. R., 17 Ky. Law Reporter 1322, and other similar cases, created such an obstruction as is contemplated by the statute, we find that in those cases, as will be seen from an examination of the opinions, that the defendant entered into a contract or agreement to continue the pay of the plaintiff in consideration that he would not sue, which clearly served to disarm him; and it was rightfully held in those cases that such an agreement obstructed the running of the statute and that the time covered by the continuing of this agreement until it was repudiated, should be deducted from the limitation period applicable to the case.

Taking the testimony upon that point most strongly in favor of the plaintiff, which is accepting what he has to say about it as true, we fail to find any agreement to that effect. It was merely a voluntary statement, according to his testimony, of Griffin, that he would be kept on the pay-roll without the exacting of plaintiff any character of promise whatever, and without any consideration at all, and it was soon discovered by the plaintiff that the defendant did not regard it as a contract or a binding promise.

The obstruction created by a promise of continued payment must be such as would enable the plaintiff to maintain a suit upon it if violated, which clearly was not the case here, conceding that Griffin made the statement to the plaintiff as testified to by him.

We are, therefore, constrained to conclude that the plea of the statute of limitation should have prevailed, and that the court should have instructed the jury to return a verdict for the defendant based upon it, which instruction was offered and refused.

Our conclusion is not reached nor rested upon the theory that plaintiff had a reasonable time after the removal of the supposed obstruction to the running of the statute to bring his suit within a year from the time he sustained his injuries, and which obstruction was not in existence at the expiration of the limitation period, nor had been for a reasonable length of time immediately prior thereto.

Whatever may be the rule under such conditions, we do not find it necessary to determine from the facts before us, for we find from them that there never existed any obstrutcion to the limitation period as contemplated by the statute. Hence, the reference to the testimony through which plaintiff was informed of his mistake, was for the purpose of showing an absence of motive on defendant's part to conceal the facts from plaintiff or to practice a fraud upon him.

We do not deem it necessary, in view of the conclusion reached, to discuss the merits of the case further than to say that the testimony fully justified the submission of the case on the merits to the jury, and this was appropriately done by the instructions given. We say this much in view of the fact that upon another trial, if there should be one, the obstruction to the running of the statute of limitations contended for might be shown by additional testimony.

Wherefore, the judgment is reversed, with directions to proceed in accordance with this opinion.