## Sparks, et al. v. Maeschal, by, etc.

(Decided December 17, 1926.)

### Appeal from Rockcastle Circuit Court.

1. Evidence—Corporation's Agent's Statement to Injured Boy 9 Days After Accident that he Put Dynamite Caps in Automobile Held Inadmissible Against Corporation.—In action against corporation and agent for injuries to boy from dynamite caps found in company's automobile operated by agent, statement of agent to boy, 9 days after injury, that he put caps in car, held admissible against him but inadmissible against corporation.

2. Explosives—Negligence in Leaving Dynamite Caps in Automobile, Causing Injury to Boy, Held for Jury.—Evidence of negligence held sufficient to take case to jury, in action against corporation and agent for injuries to boy from dynamite caps which he found when left alone in company's car while agent went into office.

3. Explosives—Automobile Owner, Without Knowledge of Presence of Dynamite Caps in Car, Not Liable for Boy's Injuries.—Corporation and agent are not liable for injury to boy from dynamite caps found in company's automobile, operated by agent, if they did not put caps in car and did not know they were there.

4. Explosives—Owner, Using Reasonable Care in Leaving Boy in Automobile, Not Liable for Boy's Injuries from Dynamite Caps Found.—Corporation and agent are not liable for injury to boy from dynamite caps found in automobile owned by company and operated by agent, if agent used reasonable care under circumstances in leaving boy in car.

5. Trial—Rebuttal Evidence that Corporate Agent Said he Put Dyna-
mite Cap in Automobile where Injured Boy Found it is Competent
Only to Impeach Agent.—In action against corporation and agent
for injury to boy by exploding dynamite cap, evidence that agent
said he put cap in car where boy found it, if admitted in rebuttal,
is only competent to impeach agent.

6. Trial—Attorney's Argument that Corporation was Rich and
Powerful and His Client Poor Held Error.—In personal injury
action against corporation, attorney's argument that defendant
was rich and powerful and that his client was poor held error.

C. C. WILLIAMS and B. J. BETHURUM for appellants.

L. L. WALKER and S. D. LEWIS for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON—
Reversing.

The W. J. Sparks Company is a corporation which
crushes stone and does a general contract business. Its
principal office was at Mt. Vernon, Kentucky. W. J.
Sparks was the president and general manager. Ab
Sparks was the assistant general manager. He lived at
Mt. Vernon, but at the time in controversy had charge of
certain work the company was doing on the Dix dam. He
used a Dodge car of the company in going from his resi-
dence to his work. One Sunday evening in December,
1923, before he went back to the dam he started to the
office of the company in the car to see the president, John
Williams, a little boy seven years old who lived nearby,
hollered and asked him to let him ride. Sparks said:
"Come on;" the little boy jumped in, and William Maes-
chal, a little boy eight years old who was playing nearby,
said he wanted to go too, and Sparks told him to get in.
He went on down to the office with the two boys in the
car. When he reached the office he got out and went in
the house; William went also to the office, but after stay-
ing there a few minutes returned to the car before Sparks
left the office. When William got back to the car John
had two dynamite caps in his hand; they were of brass,
about an inch long and about as large as a lead pencil.
He gave one to William. John had found the caps in the
car while William was gone. The caps were in the pocket
of the car, but the proof is conflicting as to whether the
flap was down or not. The boys state that the flap was
torn off and the caps could be seen in the bottom of the
pocket from the seat of the car. The company proved
that the flap was in good condition and that the caps

could only be seen by raising the flap and looking in the pocket. Sparks returned in a few minutes from the office, took the boys home and went on to the dam, knowing nothing of their having taken the caps while he was gone, or in fact knowing nothing of the caps being in the car, as he testified. William took the cap home with him and, not knowing its dangerous character, exploded it, receiving very serious injuries. This action was brought by him by his next friend to recover therefor. A verdict and judgment having been rendered in his favor against the corporation and against Ab Sparks for the sum of $2,000.00 they appeal.

The proof for the defendants showed that about Thanksgiving time the Sparks Company had loaned this car to John Griffin, who was doing some work on the county road leading from the Dixie highway to Withers. Griffin was doing some blasting and had dynamite caps there. He had some caps left and put them loose in the pocket of the car. The proof also showed that Ab Sparks had at times carried caps from Mt. Vernon to the dam in this car, but he took them always in the original package, which was unbroken, and he had never placed any loose caps in the pocket of the car as these caps were.

The mother of the child testified, over defendant's objection, that nine days after the child was injured Ab Sparks came to her house and said to the child, "William, I put those caps in the car; I had forgotten to take them out; I put them in two weeks before; some men wanted them at the quarry and I did not take them out." The objection of the corporation to this testimony should have been sustained. Nothing that Ab Sparks said nine days after the accident was competent against the corporation, although his statement was competent against him, as he was one of the defendants to the action. Farmers' Bank v. Wickliffe, 131 Ky. 787; Cincinnati, etc., R. Co. v. McWhorter, 203 Ky. 252.

The defendants asked the court to give the jury this instruction, after a peremptory instruction was refused:

> "The court instructs the jury that even though they may believe from the evidence that dynamite caps were in the pocket of the car, spoken of in the evidence, yet, if they shall believe from this evidence that said caps were not in plain view so they could be readily seen by a casual observer, or if they be-

lieve that said caps were covered, or not in plain view, the law is for the defendants, and they should so find.''

The court refused to give the instruction and in substance told the jury that they might find for the plaintiff under the facts above stated if the defendants Ab Sparks and W. J. Sparks Company knew, or by the use of ordinary care could have known, that said dynamite caps were in the pockets of said car and in an exposed condition.

In Cincinnati, etc., Railway Co. v. Padgett, 158 Ky. 301, a stick of dynamite had been left in a bucket and some pitch had then been poured in the bucket. Some workmen, not knowing that the dynamite was in the bucket, threw it in the fire; it exploded, injuring the plaintiff. The court thus stated the law of the case:

''It is the duty of persons who keep in their possession or employ in their business that which, unless carefully guarded and cautiously used, is dangerous to others, to exercise such care to see that the dangerous agency is so kept and used as not to inflict injury upon others as an ordinarily prudent person would be expected to exercise in the use and keeping of such dangerous agency.'' P. 303.

In Miller v. Chandler, 168 Ky. 606 (the first appeal of the case being reported in 163 Ky. 301), where some children playing in a hayloft found some dynamite caps which exploded and hurt one of them, the court, affirming the judgment in favor of the plaintiff, thus stated the law:

''The question presented to us upon this appeal is whether or not appellant exercised ordinary care in storing the dynamite and caps in the loft of this building, when the testimony tends to show that he had actual knowledge at the time that appellee was able to get into this loft, and, in fact, frequently did so. That he knew that appellee could get to the place where he was storing the dynamite, and probably would do so, is indicated by the evidence set out above, and rendered almost certain by the fact that he himself testifies that when he so stored the dynamite and caps he warned appellee against bothering them, and told him that they were dangerous and might kill him.''

In Stevens v. Stevens, 172 Ky. 780, where a little boy eleven years old got some dynamite caps at an apple peeling, the court quoted with approval from 17 R. C. L. 664, as follows:

"As a general rule a person leaving exposed and unguarded on his premises an explosive which is found by trespassing children is liable for any injuries resulting from its explosion. The rule is based on the very natural and reasonable assumption that children, wherever they go, must be expected to act upon childish instincts and impulses and those who are chargeable with a duty of care and caution towards them must calculate upon this and take precautions accordingly. If persons leave exposed to the observation of children anything which would be tempting to them, and which they in their immature judgment might naturally suppose they were at liberty to handle or play with, such persons should expect that liberty to be taken."

In Carter Coal Co. v. Smith, 173 Ky. 843, a little girl nine years old, while playing near the power house of the company, found two dynamite caps among some bolts in an old cupboard that the company had moved out of the power house and laid upon its back within about 15 feet of the power house and upon its land. The court reversing the judgment in favor of the plaintiff, thus stated the law:

"If appellant was responsible for the presence of the dynamite caps in the place where they were found, upon its premises, there can be no doubt of its liability to this little girl and her father, for the injuries complained of, because, whether children were in the habit of frequenting the place or not, its accessibility to them was sufficient to render it negligent to place such a dangerous explosive as dynamite caps in an open cupboard.

"Upon the other proposition, that the evidence does not show that appellant placed the caps in the cupboard, or knew of their presence there, appellant's contention is sustained.

"Unless appellant is liable simply because the caps were upon its premises, without regard by whom they were placed there, or whether appellant

knew of their presence, appellees have clearly failed to make out a case. It would seem, certainly, to be carrying the doctrine to an unusual and unwarranted length, to hold that the owner is under a duty of inspection to avoid the possibility of the presence of dangerous explosives on his premises. We know of no case so holding, and are quite confident there is none such.''

In C. & O. R. R. Co. v. Rogers, 173 Ky. 571, a little boy eight years old, while playing on the platform in front of a shanty at the K. C. Junction, picked up five tin signal torpedoes which he carried home, and in exploding one of them he was painfully injured. Reversing a recovery for the plaintiff the court held that the evidence failed to connect the company with the leaving of the torpedoes where the infant found them, the evidence showing that a number of other companies used that junction, and it not appearing how the torpedoes came to be where they were found, or that the defendant knew they were there.

In Ball v. Middlesboro, etc., Co., 68 S. W. 6, where the dynamite caps had been placed on the premises by another and the defendant did not know it, it was held not liable, but the court added:

"If it had stored a quantity of dynamite in the house with the knowledge that boys were using it as a hiding place and without closing the hole at which it knew they entered, a different question would be presented.'' To same effect see notes 36 A. L. R. p. 134-136; notes 43 A. L. R. p. 434-446.

In Armstrong v. Sumne, etc., Co. 211 Ky. 750, the corporation was delivering milk and had in its employ a man operating a truck in delivering the milk. He took on the truck with him a boy, and while they were running along the boy fell off and was killed. It was held that he was performing no duty to the master in allowing the boy to ride on the truck and that the master was not liable for the injury to the boy.

In Williams v. Portsmouth, etc., Co., 213 Ky. 96, the driver of one of the company's wagons gave the boy a ride on the wagon, and while the boy was up on the wagon by some accident it turned over and the boy was killed.

It was held that the corporation was not liable because the driver was not serving it in giving the boy a ride.

These cases would be in point here if the little boy had been hurt by some accident while the car was going down to the company's office. But when they reached the office and the man in charge of the car left the little boys in the car while he went in the office, the rule must be the same as if this man had charge of a storeroom there at the office and had left the little boys in the storeroom while he went in to the office to see the president. If the evidence for the plaintiff was true the dynamite caps were there in plain view of the little boys and within easy reach of them, and if this was the fact it was a question for the jury whether in the exercise of ordinary care, precaution should have been taken to guard the children from the peril. For the shiny, bright caps would be attractive to children, and the explosive power of such caps is so great that care in proportion to the danger should be used. The case is the same as it would be if the boys had for the first time come to the car while standing at the office and been left in it by Ab Sparks while he went into the office to see the president. It was the company's car, used in its business by its assistant manager, and its liability is just the same as it would be if they had been left by him in its storage room kept by him, for the car was its storage room for the things it kept in the car. But it was not liable for things put in the car by others without its knowledge, and neither Sparks nor the company is liable unless Sparks had put the caps in the pocket of the car, or knew that they were there.

The court, therefore, concludes that the motion for a peremptory instruction was properly overruled, both as to Ab Sparks and the company, but that the circuit court misinstructed the jury and failed to properly instruct the jury. On another trial, in lieu of instruction No. 1 given by the court, and in lieu of instruction No. 1, asked by the defendants, the court will give the jury these instructions:

No. 1. If the jury believe from the evidence that on the occasion in question there were dynamite caps in the pocket of the automobile of the defendant, W. J. Sparks Company, which was in charge of the defendant, Ab Sparks, at the time, and that said caps were in the pocket of the automobile, where they could easily be obtained

by a person in the car, and that the defendant Ab Sparks permitted William Maeschal and John Williams to remain in the car where the dynamite caps were so exposed while he went into the office, and that said dynamite caps were unusually attractive to children of the age of plaintiff, William Maeschal, and John Williams, and that the defendant Ab Sparks had placed the caps in the pocket of the car, or knew that they were there in such exposed condition and failed to use such care as may reasonably be expected of a person of ordinary prudence under the circumstances in permitting the said William Maeschal and John Williams to remain alone in the car when the dynamite caps were so exposed, and that the plaintiff William Maeschal by himself or through the boy John Williams, secured possession of one of the caps from the pocket of the car and caused the same to be exploded, thereby causing the injuries complained of, and that he was at the time using such care for his own safety as a boy of his age may reasonably be expected to use under the circumstances, then the law is for the plaintiff and the jury should so find. But unless the jury shall so believe from the evidence the law is for the defendants and you should so find.

No. 2.    Though the jury may believe from the evidence that the dynamite caps were in the pocket of the car, yet if the jury shall believe from the evidence 'that Ab Sparks did not put the caps in the car and did not know that they were in the pocket of the car, or if the jury believes from the evidence that Ab Sparks in leaving the little boys in the car as he did, exercised such care as may be reasonably expected of a man of ordinary prudence under the circumstances, the jury will in either of these events find for the defendants.

If on another trial evidence is admitted in chief as to what Ab Sparks said some days after the child was injured, the court will sustain the objection of the defendant, W. J. Sparks Company, to this evidence and will admonish the jury that this evidence is only to be considered by them as against the defendant Ab Sparks. If it is admitted in rebuttal it is only competent to impeach the testimony of Sparks.

In final argument to the jury the plaintiff's attorney, L. L. Walker, said this: ''I feel the weight of the responsibility that rests upon me in presenting the case of

this poor little boy against this rich and powerful corporation.'' The corporation's objection to this argument should have been sustained. It was gross misconduct in the attorney to rely upon the fact that the defendant was a rich and powerful corporation. The rich and poor stand alike before the law. The corporation is entitled to have its cases tried just as the cases of individuals are tried, and there should be no effort to create prejudice against the defendant by the fact that it is a corporation.

Judgment reversed and cause remanded for a new trial.

Whole court sitting.