## Hartford Fire Insurance Company v. Conway.

(Decided March 23, 1928.)

## Appeal from Bourbon Circuit Court.

1   Insurance.—In action on policy covering automobile against loss
    by fire, in which testimony was conflicting as to whether insured
    had himself burned the property, evidence held to sustain verdict
    allowing plaintiff recovery.

2.  Insurance.—In action on policy covering automobile against fire,
    evidence that insured had made out a bill of sale was insufficient
    to warrant submission of question of ownership to jury, where
    bill of sale had not been delivered, and person named therein
    knew nothing about transaction.

3.  Appeal and Error.—In action on fire and theft policy covering
    automobile, in which defense was that fire was set by insured,
    argument of plaintiff's attorney that "they want you . . . by
    your verdict (to) convict him of arson, and perhaps send him to
    the penitentiary for ten years," held not prejudicial.

JOHN J. WILLIAMS for appellant.

DENIS DUNDON for appellee.

OPINION OF THE COURT BY JUDGE LOGAN—Affirming.

The appellant, in April, 1926, issued a policy to appellee, insuring him for a term of one year in the sum of $500 against loss, by fire or theft, of an automobile. The garage of appellee burned in February, 1927, and the automobile so insured was totally destroyed. Proof of loss was furnished appellant, but it refused to pay, whereupon appellee instituted suit to recover the amount named in the policy contract. The appellant in its answer sought to avoid the contract on the alleged ground that appellee burned the garage, and on the further ground that he was not the sole and unconditional owner of the automobile at the time of the loss.

The jury heard the evidence, and accepted the testimony of appellee that he did not burn the property instead of the strong circumstances pointed out in the evidence of appellant tending to show that he did so. The jury found for appellee in the sum of $500.

The appellant urges three grounds for reversal. One is that the attorney representing appellee was guilty of misconduct in his final argument to the jury; while another is that the verdict is not sustained by sufficient evidence; and the last is that the court erred in instruct-

ing the jury and in failing to give instructions asked for
by appellant.

The appellee is a very old man; his age appearing
as 84 years. He testified that he did not burn the prop-
erty, and that it was not burned with his knowledge or
consent. His evidence is clear and positive. According
to his testimony, he was in bed when some one aroused
him by the cry of fire. He made some statements while
on the witness stand which might be construed as show-
ing a guilty conscience, but these are very few, and may
be explained on some other ground. When he was asked
whether he had anything to do with putting the auto-
mobile in the garage on the evening of the fire, he replied
that he did not, and then volunteered an opinion that it
caught fire from the wires. Another statement of his is
pointed out by counsel for appellant as tending to show
that he was guilty. While he was testifying, he was
asked if he had anything to do with the burning of the
property. His answer was to the point so far as it was
responsive to the question, but, after answering the ques-
tion in the negative, he volunteered the further statement
that he would not have fooled with burning the automo-
bile and thereby injure the house close to the garage. We
have read the evidence of the appellee, and we find noth-
ing in it except a straightforward statement on his part
that he did not burn the property, and that he knew noth-
ing as to the origin of the fire. The fire occurred some
time after 10 o'clock at night, and there was a vigorous
effort on cross-examination to obtain admission from ap-
pellee that he was in the garage a few minutes before the
fire, but he adhered to his statement that he was not.

A witness for appellant testified that appellee had
been acting strangely for several nights, and that he and
another man had been up several nights watching appel-
lee. He testified that on the night of the fire, and a short
while before, he saw appellee going towards the garage
while the clock was striking 10 o'clock. The witness
stepped back into the house, and put on his slippers.
When he looked again, appellee was coming away from
the garage, at a distance of about 10 feet from it. This
was about 10 minutes after he saw him enter the garage.
At the same time he saw a light in the garage, and in a
few minutes thereafter he saw that the garage was burn-
ing. This witness testified that he did not go to the fire,
but later he went up to the room of appellee, and there he

found appellee and another man in the room. Appellee was fully dressed at the time.

Another witness testified for appellant that he knew nothing of the fire until Stone (the witness for appellant mentioned above) aroused him. He had also been watching the garage that night until 10 o'clock. When he was aroused, he did not go to the fire at that time, but proceeded to the room of appellee, where he asked him how the garage caught fire, and the old man replied, ''Damn it, I never done it.'' These two witnesses had been watching the garage for some nights previous to the night of the fire. They had seen appellee go into the garage that night. We do not fully understand why they were watching the garage. These witnesses appear to have had a key to the door of the garage, and were able to lock it when they so desired, or at least one of them testified that he had locked the door of the garage over the protest of appellee.

A few nights prior to the fire one of these witnesses testified that he found the cap off of the gasoline tank and a lot of rags piled up in front of the tank with gasoline on them. These witnesses continued to watch and night after night, they testified, they saw appellee go to the garage, but nothing happened. The testimony of these two witnesses has some pecularities about it and a strangeness which is not well explained by them. The jury heard what they had to say about it, and they also heard the story of the old man, and juries are to determine whether one witness or set of witnesses is telling the truth, or whether another witness or set of witnesses has testified to the truth. We cannot say that the verdict of the jury is flagrantly against the weight of the evidence. The old man explained the suspicious circumstances brought out against him in a satisfactory way in some instances, while he denied other things testified to by the witnesses for appellant.

The two witnesses who claimed to have watched the garage of nights apparently did not impress the jury very greatly with their evidence. If they were expecting the old man to burn the garage, and discovered that he had everything ready to touch the match to it several days before it was actually burned, their conduct in doing nothing to prevent the execution of his plan is such as to cast a doubt upon their entire testimony.

Another point urged by counsel for appellant is that appellee was not the sole and unconditional owner of the

automobile at the time it was burned, or they argue that there was evidence tending to show that he was not such, and the court should have covered the issue in the ·instructions. We hardly think counsel for appellant is seriously relying upon this alleged error. Appellee testified that ·he had .made. out a bill of sale in the name of a young lady, but he did not deliver the bill of sale to her or the automobile. She knew nothing whatever about what had been done. There was no delivery of the automobile to this lady either actually or symbolically. The court should not have submitted the question of ownership to the jury. Peters' Adm'r v. Peters (Ky.), decided March 20, 1928; 3 S. W. (2d) ——.

The last ground urged for reversal is misconduct on the·part of counsel for appellee in his final argument of the case before the jury. What the attorney said was:

> "They haven't said this old man burned his car, but they want you to say he did, and by your verdict convict him of arson, and perhaps send him to the penitentiary for 10 years."

We do not believe this argument was prejudicial. The cases cited by counsel for appellant do not support his contention in this case. There was nothing in the statement calculated to arouse the feeling of one class as against another class, as in the case of Sparks v. Maeschal, 217 Ky. 235, 289 S. W. 311. There was no reference to extraneous matters as there was in the case of Gunterman v. Cleaver, 204 Ky. 62, 263 S. W. 683, and a number of other cases to the same effect. The statement made by counsel in his closing argument was in the main true. The statement is made in the brief for appellant that it did not establish·that any one saw appellee applying the torch or match which caused the fire, but the circumstances were such as to point to his guilt. We assume the same argument was advanced below, as it is a legitimate argument, and there are abundant facts to justify such an argument. It may not have been literally true that a verdict of the jury in favor of appellant would have convicted appellee of arson. It must not ˙be overlooked, however, that the sole question for determination was whether he had burned ˙the property, and, if the jury should have found that he burned it, it would have been a finding that he had been guilty of the offense of arson, for which he could be convicted and sent to. the penitentiary. We cannot sustain that ground for reversal.

Perceiving no error prejudicial to the substantial rights of the appellant, the case should not be reversed. Judgment affirmed.