## Wabash Elevator Co., Inc., v. Illinois Cent. R. Co., Inc.

June 13, 1939.

M. L. Blackwell, Judge.

L. C. Flournoy, Jr., for appellant.

Drury & Drury, Pentecost & Dorsey and Trabue, Doolan, Helm & Helm for appellee.

OPINION OF THE COURT BY JUDGE CAMMACK—Affirming.

The appellant, Wabash Elevator Company, Uniontown, Kentucky, is appealing from a judgment on a verdict under which it was awarded the sum of $735 for two cars of corn (2,100 bushels) at a price of 35 cents per bushel. The Elevator Company sought to recover for 2,550 bushels of corn at the market price of $1.04 a bushel delivered at Henderson, Kentucky, less the freight from Uniontown. The corn was damaged by the flood waters of the Ohio River during the 1937 flood. It was sold by the Railroad Company at Henderson for 35 cents per bushel.

W. C. Bland, an officer of the Elevator Company, testified that he ordered two empty cars to be delivered at the elevator in Uniontown through the appellee's office at Morganfield. Bland said that he usually ordered cars through the appellee's office at Uniontown, but that sometimes they were ordered through the Morganfield office. He testified also that the Railroad Company's telephone lines were down from Uniontown to Morganfield because of a sleet storm, and that he called

the agent in Morganfield because that was easier than going to the Uniontown station. The distance between the elevator and the station is approximately one-quarter of a mile. There is no dispute that the cars were delivered at the elevator during the night of January 21st. Bland also testified that he notified the appellee's agent at Morganfield between 9 and 9:30 on the morning of January 22nd that the cars were ready to be shipped. It appears from the record that it was the usual practice for the Elevator Company to notify the agent at Uniontown when a car was ready to be shipped. Bills of lading were handled through that office. The appellee's agent at Uniontown testified that he was not notified that the two cars in question were ready to be shipped on January 22nd.

The flood waters of the Ohio River were rising rapidly by the 21st of January, and it was apparent that Uniontown was going to be flooded. It was customary for the appellee to run one train a day from Morganfield to Uniontown, but it does not appear that any regular train was run to Uniontown after the night of January 21st. The appellee had a special train in Uniontown early in the morning of January 22nd. It left there around five o'clock in the morning. According to testimony for the appellee this extra train had taken box cars to Uniontown for the use of refugees. On January 24th, these refugee cars were taken from Uniontown by an engine belonging to the West Kentucky Coal Company. A carload of coal was moved out at that time also. There is testimony to the effect that this train was operated as a Red Cross train.

Proctor, appellee's agent at Morganfield, died before this action was instituted. One of the principal controversies in this case involves the court's refusal to permit testimony offered by the appellant relative to the alleged transactions between Bland and Proctor. Bland was not permitted to testify as to his conversations with Proctor in regard to Proctor's purported statements relating to the moving of the cars from Uniontown. The appellant sought to show by the witness Randolph that he had heard Bland and Proctor discussing the matter about a week after the corn was loaded, and that he had heard Proctor say that he had tried to get the cars moved. The court refused also to permit the appellant to introduce a letter which Proctor sent Bland on June 22nd, along with a letter which was supposed to have

been written by Proctor to T. A. Downs, the appellee's train master at Princeton, on June 22, 1937, relative to Bland's ordering the cars through him and his (Proctor's) effort to have them moved out of Uniontown on January 22nd. Proctor was on sick leave when this letter was supposed to have been written. He also signed two bills of lading which had been prepared relative to this shipment of corn. The court refused also to permit these bills of lading to be introduced by the appellant.

Counsel for the appellant vigorously contends that the trial court erred in admonishing the jury not to consider the testimony of the witness as to the conversation he said he heard between Bland and Proctor, and also in excluding the letter from Proctor to Bland and the copy of the letter which Proctor was supposed to have sent to Downs and also the two bills of lading signed by Proctor. With this contention we can not agree. Randolph's testimony related to a conversation which was said to have taken place between Bland and Proctor approximately a week after the time the corn was loaded in the cars and notice was given the appellee's Morganfield office, according to Bland's statement, that the corn was ready to be shipped. Bland's testimony as to his transactions with Proctor, Randolph's testimony, the letter which Proctor sent Bland on June 22nd, along with the copy of his letter to Downs, and also the bills of lading signed by Proctor on June 22nd, were not admissible as substantive evidence. Illinois Central Railroad Company v. Winslow, 119 Ky. 877, 84 S. W. 1175, 27 Ky. Law Rep. 329; Sparks v. Maeschal, 217 Ky. 235, 289 S. W. 308; Chesapeake & O. R. Co. v. Saulsberry, 262 Ky. 31, 88 S. W. (2d) 949. Furthermore, the letter from Proctor to Bland, the copy of the letter which Proctor was supposed to have written to Downs, and also the two bills of lading came into Bland's possession through his transactions, and communications with Proctor. Therefore, Bland could not testify as to any of these transactions and communications under Section 606, subsection 2 of the Civil Code of Practice, because Proctor was dead.

The appellant also objects to the refusal of the court to permit Fred Erwin, the appellee's telegraph operator at Morganfield, to testify that Proctor told him that he had written a letter to Downs on June 22nd, relative to the shipment of corn, and that he had exam-

ined the copy of the letter and that Proctor's signature was on it. We think the ruling of the trial court in this respect was correct for the reasons given above. This witness testified, however, that he was on duty on the 22nd of January, and that he had heard Proctor say that he had handled the transaction. He also said, "Mr. Proctor told me they were on that date (January 22nd). I guess it was, I wouldn't be positive of the date, that they were ready to go." Counsel for the appellee insists that this testimony was incompetent. Counsel for the appellant seems to be under the impression that it was taken from the jury, but our examination of the record does not bear out this contention. It is apparent, therefore, that regardless of whether or not the evidence was competent, there was some evidence before the jury as to the alleged transaction between Bland and Proctor.

The appellant's second major contention is directed toward the instructions given by the trial judge and also his failure to give instructions offered by it. This contention can best be stated by quoting from the points and authorities of the appellant's brief. It is as follows:

"The court erred in refusing to instruct the jury as requested by the appellant or to incorporate into the given instructions that it was the duty of the carrier when unable to carry goods forward to their place of destination from causes which it did not produce and over which it had no control to take all possible care of goods and is responsible for every loss or injury which might have been prevented by human foresight, skill and prudence."

The first instruction offered by the trial court authorized the jury to find for the appellant if they believed that the appellee was negligent and careless in failing to move the cars of corn as charged by the appellant. The jury was told in substance that if they believed that the appellant had notified the appellee that the cars were ready for shipment and that the appellee had accepted the cars for shipment, it was the duty of the appellee to exercise ordinary care to remove the cars from Uniontown within a reasonable time, "taking into consideration the situation of said cars, the regular and orderly movement of its trains, the conditions of weather or flood then existing in that district and affecting the operation of the defendant's trains, if they were

so affected, and having in mind the reasonable safety of the defendant's equipment required for such movement and of its employees in charge thereof.'' We do not think that this instruction was prejudicial to the appellant's substantial rights. The jury had before it the testimony of the appellant to the effect that the cars could have been moved from the elevator up until the 25th or 26th of January. It had before it also the testimony of witnesses for the appellee that it had no train in Uniontown after early in the morning of January 22nd; that the freight train in Morganfield on January 22nd was a special train; and that the prudent operation of its railway system would not have warranted its moving these two cars from the elevator in Uniontown, granting that it had notice of the delivery of the cars.

We do not deem it necessary to enter upon a discussion of the flood disaster which was imminent along the Ohio River shortly after the middle of January, 1937. Doubtless, some of the jurymen were on the ground when the flood was in progress. They were well aware of the conditions prevailing at that time. They might well have found under instruction No. 1 that, even if the appellee had notice of the delivery of the two cars, conditions were such that the appellee should not be held liable for the corn under that instruction because of its inability to move the cars, taking into consideration the prevailing weather and flood conditions and the prudent operation of the railway.

We do not think that the other instructions given by the trial court were prejudicial to appellant's substantial rights. Nor do we believe that the court erred in failing to instruct the jury, as urged by the appellant, as to the appellee's liability for the corn for, ''every loss or injury which might have been prevented by human foresight, skill and prudence.'' We think that the first instruction given by the trial court properly covered the conditions under which the appellee would be liable. This ruling is not inconsistent with the ruling in the case of Chesapeake & Ohio Railway Company v. Williams, 156 Ky. 114, 160 S. W. 769, 49 L. R. A., N. S., 347, which case is cited by the appellant.

The sixth instruction, to which particular objection is raised, is as follows:

"If you do not find from the evidence that said cars of corn were accepted by the defendant for trans-

portation but do find that the defendant converted the said corn to its own use by selling same, you should then find in favor of the plaintiff the reasonable market value of the corn so converted at the time of its conversion, to-wit; February 14, 1937, which finding should be measured by the number of bushels of corn you may find from the evidence to have been in said cars, multiplied by its reasonable market price per bushel.''

Under this instruction the jury found for the appellant in the sum of $735. This amount represented the price of 2,100 bushels of corn calculated at 35 cents per bushel. There is sharp conflict in the evidence as to the amount of corn in the two cars. According to the testimony of the president of the Henderson Elevator Company, there were 1,507 bushels of corn in them, according to the standard rule for measuring ear corn. This witness further testified that the maximum amount of corn which could have been placed in the cars would have been 2,210 bushels had they been loaded completely to the top. The verdict of the jury was based upon the assumption that the cars were loaded within one foot of the top. It can be readily seen, therefore, that the jury made a liberal allowance for the amount of corn in the cars.

The appellant also makes the point that the verdict was not sustained by sufficient evidence and is contrary to law. We do not think there is any basis for this contention.

It is our conclusion, therefore, that the judgment of the lower court should be and it is affirmed.