*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0334A (6th Cir.)
File Name: 04a0334a.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

FANNIE BALL, et al.
(02-6289); STEPHEN HEISER,
et al. (02-6311),
    *Plaintiffs-Appellants,*

*v.*

UNION CARBIDE CORP., et al.,
    *Defendants-Appellees.*

Nos. 02-6289/6311

Appeal from the United States District Court
for the Eastern District of Tennessee at Knoxville
Nos. 01-00022; 01-00037—James H. Jarvis, District Judge.

Argued: April 27, 2004

Decided and Filed: September 30, 2004

Before: GUY and GILMAN, Circuit Judges; BARZILAY, Judge.*

_____

* The Honorable Judith M. Barzilay, Judge, United States Court of International Trade, sitting by designation.

_____

## COUNSEL

**ARGUED:** Edmund L. Carey, Jr., BARRETT, JOHNSTON & PARSLEY, Nashville, Tennessee, for Appellants. Christopher Landau, KIRKLAND & ELLIS, Washington, D.C., John T. Buckingham, ASSISTANT UNITED STATES ATTORNEY, Knoxville, Tennessee, for Appellees. **ON BRIEF:** Edmund L. Carey, Jr., George E. Barrett, BARRETT, JOHNSTON & PARSLEY, Nashville, Tennessee, for Appellants. Christopher Landau, Susan E. Kearns, KIRKLAND & ELLIS, Washington, D.C., John T. Buckingham, ASSISTANT UNITED STATES ATTORNEY, Knoxville, Tennessee, Kevin T. Van Wart, KIRKLAND & ELLIS, Chicago, Illinois, E. H. Rayson, Thomas M. Hale, KRAMER, RAYSON, LEAKE, RODGERS & MORGAN, Knoxville, Tennessee, for Appellees.

_____

## AMENDED OPINION

_____

JUDITH M. BARZILAY, Judge. This is a consolidated case. The *Heiser* Plaintiffs are individuals who live or have lived in or near Oak Ridge, Tennessee, and who allegedly have cancer or have an increased risk of acquiring cancer or other diseases. The *Ball* Plaintiffs are African-Americans who live or have lived in a community known as Scarboro in Oak Ridge. Plaintiffs claim that they have been harmed through exposure to radioactive and other toxic substances over the period when nuclear weapons were manufactured in Oak Ridge. Defendants are private contractors of the United States government that operate or have operated nuclear weapons manufacturing and research facilities in the Oak Ridge Reservation ("Contractor-Defendants"), and Secretary Spencer Abraham of the United States Department of Energy

and John A. Gordon of the National Nuclear Security Administration ("Government-Defendants"). Plaintiffs appeal from a final order granting summary judgment to both the Contractor-Defendants and Government-Defendants, and the denial of Plaintiffs' motion for class certification. Plaintiffs seek injunctive and equitable relief for medical monitoring and environmental cleanup, and, in *Heiser*, damages.[1] For all the reasons stated below, we **AFFIRM**.

## BACKGROUND

The federal government established the Oak Ridge Reservation ("ORR") as part of the Manhattan Project in 1942. The ORR includes three production facilities, each in a separate valley. The city of Oak Ridge was established in the ORR to house thousands of civilian workers and military personnel. The federal ownership and control of the area ended when the City of Oak Ridge received a charter of incorporation from the State of Tennessee in 1959.

In the early 1940s, African-American workers were recruited from Tennessee and other southern states to work as common laborers, janitors, and domestic workers in Oak Ridge. These workers were housed in a separate camp, which came to be known as Scarboro, near one of the Oak Ridge plants, code named Y-12, that enriched uranium and produced nuclear weapon components. It is undisputed that Scarboro was established and maintained as a segregated community in the 1940s. The district court noted that "Scarboro remains a

---

[1] The *Ball* Plaintiffs no longer ask for damages, *Pls.' Ball Br.* at 1-2, 19, even though initially they sought damages along with injunctive relief and never amended their complaint to that effect. (JA 51, 52.) Contractor-Defendants argue that the *Ball* Plaintiffs cannot "amend" their complaint in their briefs to this court. *See Con-Defs.' Ball Br.* at 17. In any event, the *Ball* Plaintiffs' arguments on this issue are without merit, as explained below.

predominantly African-American community in Oak Ridge." (JA 192.)

In addition to federal agencies, the following private contractors operate or have operated the Oak Ridge facilities and are named as Contractor-Defendants in Plaintiffs' complaint: the University of Chicago; Monsanto Company; Union Carbide Corporation; Roane-Anderson Company; Management Services, Inc.; Eastman Chemical Company; Eastman Kodak Company; Turner Construction Company; UT-Battelle, LLC; Martin-Marietta Energy Systems, Inc.; Lockheed Martin Energy Systems, Inc.; BWXT Y-12 LLC; and Bechtel Jacobs Company, LLC. (JA 32, 147.)

In 1992 the state and federal governments collaborated in forming a panel (Oak Ridge Health Agreement Steering Panel ("ORHASP")) to study the health effects of the release of radioactive and other toxic substances from the Oak Ridge facilities. The ORHASP periodically disclosed the results of its ongoing study and held open meetings throughout the 1990s. The study was covered by the news media.

On January 15, 2000, the ORHASP issued its final report to the public. The report was dated December 1999. The ORHASP final report determined:

The results suggest it is likely that some people were hurt by the releases. The project reports present estimates of the number of people who could have become ill as a result of exposure to the ORR environmental pollutants. Two groups were most likely to have been harmed: local children drinking milk from a "backyard" cow or goat in the early 1950s, and fetuses carried in the 1950s and early 1960s by women who routinely ate fish taken from the contaminated creeks and rivers located downstream from the ORR.

(JA 1329.)

The *Heiser* Plaintiffs claim personal injury from emissions. Four of the *Heiser* Plaintiffs allege they have developed thyroid cancer due to radioactive emissions. The remaining three allege they are at risk of developing thyroid cancer.

The *Ball* Plaintiffs allege discrimination under a number of civil rights statutes and the Equal Protection and Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution. In particular, the *Ball* Plaintiffs allege that "Defendants located and maintained, and continue to maintain, Scarboro in an area known by Defendants to be the most contaminated and the most vulnerable to ongoing pollution because of its proximity to the Y-12 plant." *Pls.' Ball Br.* at 13-14. Plaintiffs maintain that as a result, the housing in Scarboro is less desirable, worth less, and accorded lower priority in terms of cleanup than other parts of Oak Ridge. Plaintiffs also maintain that "Defendants, by placing Plaintiffs in the location of Scarboro and the immediate environs of the Y-12 plant, created a condition which was inherently unsafe and unhealthy; and is the proximate cause of Plaintiffs' injuries and of their higher risk of injuries, creating the need for medical monitoring and surveillance." *Id.* at 15.

Plaintiffs commenced this action within one year of the date of the release of the ORHASP final report on January 15, 2000.

## Discussion

### A. *Notice and Discovery*.

Plaintiffs first challenge the district court's grant of summary judgment under Fed. R. Civ. P. 56 on the basis that the statute of limitations had run on Plaintiffs' claims. Plaintiffs argue that the district court should not have granted the summary judgment without first giving notice to Plaintiffs and without permitting Plaintiffs discovery as to the statute of limitations issue. *Pls.' Ball Br.* at 21-25; *Pls.' Heiser Br.* at 33, 35-36. Contractor-Defendants counter that a separate notice was not required because their motion was for dismissal or, in the alternative, for summary judgment, which provided notice to Plaintiffs. *Con-Defs.' Heiser Br.* at 13-16.

A district court's decision to convert a motion to dismiss under Rule 12(b)(6) into a motion for summary judgment under Rule 56 is reviewed for abuse of discretion. *See Shelby County Health Care Corp. v. S. Council of Indus. Workers Health & Welfare Trust Fund*, 203 F.3d 926, 931 (6th Cir. 2000).

When deciding on a motion for summary judgment, Fed. R. Civ. P. 56(f) allows the court to order discovery if it "should . . . appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition." Further, under Fed. R. Civ. P. 12(b), before the district court may treat a motion to dismiss as a summary judgment motion, it must give "all parties . . . reasonable opportunity to present all material made pertinent to" the issue. The Sixth Circuit interpreted this requirement to mean that it is "serious error" for a district court to convert the motion *sua sponte* to a summary judgment motion without notice to parties and without further discovery. *Helwig v. Vencor, Inc.*, 251 F.3d 540, 552 (6th Cir. 2001) (*en banc*).

Here, the district court did not act *sua sponte* in converting the motion to dismiss to a summary judgment motion. Contractor-Defendants moved for summary judgment in the alternative. Moreover, as Contractor-Defendants correctly assert, Plaintiffs responded to the summary judgment motion by submitting materials outside the pleadings, such as affidavits. *See Con-Defs.' Heiser Br.* at 14-15. Therefore, Plaintiffs' insistence that they "genuinely were surprised that the Court would have any intention to convert the motion," *Pls.' Heiser Br.* at 34, is not supported by the facts. They had

notice that the district court might treat the motion as one for summary judgment because such a motion was actually filed, and they responded to it.

Accordingly, the only remaining issue is whether the district court abused its discretion in denying Plaintiffs' request for discovery before it granted the summary judgment motion.

It is well-established that the plaintiff must receive "a full opportunity to conduct discovery" to be able to successfully defeat a motion for summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"); *White's Landing Fisheries, Inc. v. Buchholzer*, 29 F.3d 229, 231-32 (6th Cir. 1994) ("[in light of *Anderson* and *Celotex*,] a grant of summary judgment is improper if the non-movant is given an insufficient opportunity for discovery").

The district court's decision to deny further discovery is, however, generally unreviewable unless the appellant has filed "a Rule 56(f) affidavit or a motion that gives the district court a chance to rule on the need for additional discovery." *Plott v. Gen. Motors Corp.*, 71 F.3d 1190, 1196 (6th Cir. 1995). "Beyond the procedural requirement of filing an affidavit, Rule 56(f) has been interpreted as requiring that a party making such a filing indicate to the district court its need for discovery, what material facts it hopes to uncover, and why it has not previously discovered the information." *Cacevic v. City of Hazel Park*, 226 F.3d 483, 488 (6th Cir. 2000).

The Sixth Circuit generally applies the abuse of discretion standard to the district court's decision to deny discovery whether such request was made on a motion or by a Rule 56(f) affidavit. *See Plott*, 71 F.3d at 1196-97. It is not an abuse of discretion for the district court to deny the discovery request when the party "makes only general and conclusory statements [in its affidavit] regarding the need for more discovery and does not show how an extension of time would have allowed information related to the truth or falsity of the [document] to be discovered." *Ironside v. Simi Valley Hosp.*, 188 F.3d 350, 354 (6th Cir. 1999). It is also not an abuse of discretion to reject a Rule 56(f) affidavit as insufficient to support further discovery when the affidavit lacks "any details" or "specificity." *Emmons v. McLaughlin*, 874 F.2d 351, 357 (6th Cir. 1989).

The affidavit in question here was submitted by Plaintiffs' attorney and included the following statements in support of the discovery request:

In my opinion, to respond with due diligence, discharging my responsibilities to the class, to the materials outside the pleadings which these defendants urge the Court to consider by converting their motion to one for summary judgment, would require obtaining the results of substantial written and document discovery, and a number of depositions, on the subjects of when plaintiffs' claims accrued, and what information was released by any defendants to members of the public and when and how such releases occurred, and on a variety of statements, and agents of defendants, over the years on the subject of the safety of their operations and their impact upon the environment surrounding their operations. Only this type of discovery would produce an adequate response to the many partial documents, and partial collections of documents, submitted by Defendants, who appear upon inspection of the

documents to have selected some, and omitted others bearing on the same subjects.

(JA 508; 1181.)

Plaintiffs argue that the district court erred because the affidavit was sufficient and specific. *See Pls.' Heiser Br.* at 49. Contractor-Defendants counter that Plaintiffs' discovery request does not include any specific statements as to which "material facts [they] hope[d] to uncover." *Con-Defs.' Heiser Br.* at 18 (quoting *Cacevic*, 226 F.3d at 488). Contractor-Defendants additionally argue that "when plaintiffs' claims accrued" is not a discoverable fact, but is a legal question. *See id.*

The district court here stated (without explanation) that Plaintiffs "have not satisfied the requirements of Rule 56(f)." (JA 87.) The district court additionally noted, however, that "even if they had, they have not described any helpful discovery in light of the fact that it has been publicly debated since the early 1980s that toxins are present in the Oak Ridge community." (Id.) The district court further observed that the ORHASP final report contained no information "not previously available to the public." (Id.) The district court took judicial notice of "such publicity" under Fed. R. Evid. 201. (JA 88.)

The district court did not abuse its discretion in denying Plaintiffs' discovery request. Plaintiffs' Rule 56(f) affidavit does not state how any discovery would have shed further light on the issue of when the statute of limitations began to run. Plaintiffs merely hint at concealment on the part of Defendants with respect to adverse health effects of the emissions. *See* discussion, *infra.* The reality of toxic emissions from the Oak Ridge facilities has, however, been in the public domain for some time. Accordingly, as the district court stated, the discovery requested in Plaintiffs' Rule 56(f)

affidavit was "irrelevant" to the issue of statute of limitations. (JA 88.)

## B. Statute of Limitations.

A district court's decision to grant summary judgment is reviewed *de novo. Higgason v. Stephens*, 288 F.3d 868, 874 (6th Cir. 2002).

### (i) Personal injury claims.

The ultimate issue in this case is when the statute of limitations was triggered. Plaintiffs maintain that the district court erred in granting summary judgment in favor of all Defendants on the grounds that Tennessee's one-year statute of limitations barred Plaintiffs' claims. *Pls.' Ball Br.* at 25; *see also* Tenn. Code Ann. §§ 28-3-104(a)(1), (3) (2000). Plaintiffs argue that the statute did not begin to run with respect to their personal injury claims until January 15, 2000, when the final report of the ORHASP was released.

"The statute of limitations commences to run when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Sevier v. Turner*, 742 F.2d 262, 273 (6th Cir. 1984); *Carvell v. Bottoms*, 900 S.W.2d 23, 29 (Tenn. 1995) (the statute is triggered when the plaintiff becomes "aware of facts sufficient to put a reasonable person on notice that he has suffered an injury as a result of wrongful conduct"). "A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence." *Sevier*, 742 F.2d at 273. The Sixth Circuit explained the duty to inquire as follows:

[I]f greater than *de minimis* harm is discernable at the time of the tortious event, then the time of the event rule applies . . . [I]f the injured person sustains an injury which cannot itself be reasonably discovered, or the cause of which cannot reasonably be discovered, until

some time following the tortious event and the running of the statue of limitations, courts often apply the "discovery" rule, tolling the running of the statute of limitations to the date by which the plaintiff reasonably should have discovered both cause and injury.

*Hicks v. Hines, Inc.*, 826 F.2d 1543, 1544 (6th Cir. 1987) (quotations omitted); *see Mich. United Food & Commercial Workers Unions & Drug & Mercantile Employees Joint Health & Welfare Fund v. Muir Co.*, 992 F.2d 594, 600 (6th Cir. 1993) (in defining the concept of due diligence, this court has "looked to what event should have alerted the typical lay person to protect his or her rights." (quoting *Dixon v. Anderson*, 928 F.2d 212, 215 (6th Cir. 1991)); *Overberg v. Lusby*, 921 F.2d 90, 91 (6th Cir. 1990) (noting that plaintiff had a duty to inquire when she became knowledgeable about her medical condition); *accord O'Connor v. Boeing North Am., Inc.*, 311 F.3d 1139, 1146-48 (9th Cir. 2002) (accrual of claim must be based on "knowledge" and not "mere suspicion").

As rightly observed by Contractor-Defendants, the public record here was sufficient to alert Plaintiffs as to a possible connection between emissions and health risks near Oak Ridge long before January 15, 2000. The rule in this Circuit is that "[w]here events receive . . . widespread publicity, plaintiffs may be charged with knowledge of their occurrence." *Hughes v. Vanderbilt Univ.*, 215 F.3d 543, 548 (6th Cir. 2000) (quotation omitted). A plaintiff is charged with constructive knowledge even when she claims that "she did not hear or read any of the media reports." *Hughes*, 215 F.3d at 548. "The relevant inquiry in [such] cases . . . is an objective one." *Id.* (citations omitted).[2] That is, the question

_____

[2]Plaintiffs' attempt to distinguish *Hughes* on the basis that there was an admission by the named *Hughes* plaintiff in her complaint that she had actual knowledge of the facts sufficiently in advance of her suit is

is whether a typical person would have been aware of a possible link between emissions and health risks.[3]

Given that local and national news media repeatedly covered the issue, and that the ORHASP publicized the progression of its study since its inception in 1992 and issued its preliminary results throughout, Plaintiffs should have been

_____

unpersuasive. *See Pls.' Ball Br.* at 41-44. The *Hughes* court reached its conclusion about the plaintiff's possession of constructive knowledge before noting the admission in the complaint. *Hughes*, 215 F.3d at 548-49.

[3]With respect to the interpretation of widespread publicity, Plaintiffs rely on the Ninth Circuit's decision in *O'Connor*. *See Pls.' Heiser Br.* at 53-55. The *O'Connor* court held that "[t]he district court erred in concluding as a matter of law that newspaper reports concerning the Defendants' facilities were sufficiently 'numerous and notorious' to impute knowledge of them to Plaintiffs." *O'Connor*, 311 F.3d at 1152. The *O'Connor* court pronounced that the determination of widespread publicity

> required a fact-intensive examination of the geographic scope of the circulation of various publications, the level of saturation of each publication within the relevant communities, the frequency with which articles on the Rocketdyne facilities appeared in each publication, the prominence of those articles within the publication, and the likelihood that a reasonable person living in Plaintiffs' various communities at the same time as Plaintiffs would have read such articles. These are all factual questions unsuitable for summary judgment.

*Id.* We are of the belief that the *O'Connor* decision does not announce a bright-line rule with respect to the nature of publicity about potentially hazardous conditions like Oak Ridge emissions. We also observe that the facts in *O'Connor* are substantially different than the present case. The *O'Connor* opinion cited at least three prior studies that undermined the link between the contaminants and the cancer. The *O'Connor* court rightly observed that the media coverage did not "connect [the] dots" dispersed by unclear scientific reports. Here, on the other hand, an ambiguity to that degree was not present. There has been no scientific report negating the link between releases and health risks.

aware of a potential personal injury claim connected to Oak Ridge emissions or releases in 1998 or 1999 at the latest, when the ORHASP preliminary reports became available. (JA 213, 1391-1401, 1600-1603.) It is true that the ORHASP final report constitutes the first instance when a definite link was established with finality. However, Plaintiffs do not allege that they belong to the two groups "most likely to have been harmed" by the Oak Ridge releases.[4] The issue of the final report did not by itself trigger Plaintiffs' duty to inquire under *Hicks*. Accordingly, Plaintiffs should have raised their claims sometime in the late 1990s when it became apparent that they may have had a viable claim.[5]

More importantly, none of the Plaintiffs here claim that they have contracted a disease attributable to the toxic releases within the one-year statute of limitation period. Only some of the *Heiser* Plaintiffs allege they have actually contracted cancer, while others claim increased risk of cancer. Yet, there must necessarily be different accrual dates when the injury complained of is the increased risk of disease as

---

[4] Even that finding had been released in draft form in March 1998 and reported in local newspapers. The first paragraph of a March 1998 *Knoxville News-Sentinel* article reads "Releases of radioactive iodine from Oak Ridge National Laboratory during the 1940s and '50s probably exposed thousands of children to radiation and increased their lifetime risk of developing thyroid cancer, scientists reported Thursday in preliminary findings." *Report Ties Releases of Iodine*, KNOXVILLE NEWS-SENTINEL, March 20, 1998. An *Oak Ridger* article of the same date had the headline: "Releases Linked to Thyroid Cancer." THE OAK RIDGER, May 20, 1998.

[5] Plaintiffs' attorney specifically states in his affidavit that a lawsuit during the 1990s would have been premature and frivolous under Fed. R. Civ. P. 11. (JA 509.) "A principal reason was that most relevant information was classified, unreleased, and therefore unavailable and would remain unavailable." (Id.) However, as urged by Contractor-Defendants, the standard is an objective one and does not relate to what Plaintiffs' attorney may subjectively have believed or not believed.

---

opposed to the disease itself. When the increased risk of disease is the injury claimed, the threshold of finding a "duty to inquire" under *Hicks* is lower. That is, individuals should know that they are "at risk" as soon as a link between cancer and emissions becomes apparent. On the other hand, when the injury is contracting cancer, the claim will accrue when the plaintiff knew or should have known of the disease, not just the risk of acquiring the disease. In that event, a plaintiff must clearly plead that the injury occurred within the statute of limitations period. Plaintiffs here face a formidable statute of limitations hurdle. The reason is in part that individuals not similarly situated became plaintiffs in one and the same suit.[6] It is possible the weaker claims have obscured the stronger claims. From this vantage point, however, it is impossible to discern who would have a viable claim, especially given that no argument was advanced that plaintiffs were diagnosed with any disease during the limitations period. The district court noted correctly that "conceivably a plaintiff with a still viable claim could exist (*i.e.*, a person who was diagnosed with thyroid cancer within one year of filing suit)." (JA 88.). This opinion does not address such a claim.

On a different note, we find Plaintiffs' claims alleging the Contractor-Defendants' "fraudulent acts" of concealment to be without merit. *Pls.' Ball Br.* at 45. Plaintiffs claim no specific act of concealment, but underline that a number of the articles that covered Oak Ridge were equivocal and contained phrases such as "no harm" from the emissions, "no link" to cancer, and "no health concern." *Id.* 52; *Pls.' Heiser Br.* at 53. Plaintiffs also point to "national security classification" of information regarding Oak Ridge. *Pls.' Ball Br.* at 38.

---

[6] Indeed, the district court devoted most of its opinion to explaining why a class certification of these individuals was not appropriate.

We recognize that when a government project such as Oak Ridge is shrouded in secrecy, it may be difficult to collect the necessary facts to make a case. However, it was well known that plants in Oak Ridge engaged in nuclear weapons manufacturing and other nuclear research, that they released toxic materials, and that such toxic materials may be hazardous to human health depending on the dosage. (JA 303-12; 988-1001; 1599-1603.) Plaintiffs needed to present to this court with sufficient clarity and "particularity" what they claim was fraudulently concealed by government officials and contractors and how that affected their case. *Dayco v. Goodyear Tire & Rubber Co.*, 523 F.2d 389, 394 (6th Cir. 1975). We find nothing in the record of this case that exhibits any concealment motivated by bad faith on the part of Defendants. We further note that the duty to inquire applies even when the government may have engaged in concealment of facts. *See Kronisch v. United States*, 150 F.3d 112, 121 (2d Cir. 1998).[7]

### *(ii) Civil rights claims*.

The *Ball* Plaintiffs additionally argue that the statute of limitations does not apply because Contractor-Defendants have a continuing affirmative duty to remedy effects of exposure to emissions as such effects constitute "vestiges" of historical *de jure* racial segregation. *Pls.' Ball Br.* at 28. Plaintiffs charge that "the continuing existence of Scarboro as a segregated community is attributable (and attributed by the Amended Complaint) to all Defendants' unconscionable actions." *Pls.' Ball Br.* at 29. Plaintiffs attempt to derive support from a number of school desegregation cases, such as

---

[7]Moreover, we are of the opinion that Contractor-Defendants' raising the issue of statute of limitations gave Plaintiffs sufficient notice of the viability of this issue with respect to Government-Defendants. Accordingly, we do not believe that the district court erred in resolving this issue with respect to Government-Defendants as well. *Cf. Haskell v. Washington Township*, 864 F.2d 1266, 1273 n.3 (6th Cir. 1988).

*Freeman v. Pitts*, 503 U.S. 467 (1992); *Columbus Board of Education v. Penick*, 443 U.S. 449 (1979); and *Dayton Board of Education v. Brinkman*, 443 U.S. 526 (1979). Plaintiffs also rely on various affirmative action cases for the proposition that "affirmative action may be used to eradicate continuing effects (i.e., "vestiges") of discrimination that occurred in the past." *Pls.' Ball Br.* at 33-34. The cases cited by Plaintiffs include *Wygant v. Jackson Board of Education*, 476 U.S. 267 (1986); *Fullilove v. Klutznick*, 448 U.S. 448 (1980) (including the concurring opinion by Justice Powell); *United Steelworkers of America v. Weber*, 443 U.S. 193 (1979); *Regents of University of California v. Bakke*, 438 U.S. 265 (1978); *Hazelwood School District v. United States*, 433 U.S. 299 (1977); and *Hammon v. Barry*, 813 F.2d 412 (D.C. Cir. 1987).

Contractor-Defendants counter that Plaintiffs' alleged exposure to Oak Ridge emissions is not a "vestige" of racial discrimination. *Con-Defs.' Ball Br.* at 19-22. Contractor-Defendants alternatively argue that they have no ongoing affirmative duty to remedy the effects of discrimination by governmental entities. *Id.* at 22, 29. Contractor-Defendants finally argue that, in any event, there is no affirmative duty to remedy the effects of residential segregation.

The district court observed that "the Scarboro community has been integrated since the 1950s." (JA 89.) The district court went on to say: "To find otherwise would mean the statute of limitations would never be tolled unless every black person left Scarboro." (Id.) The district court specifically discounted the *de facto* discrimination cases regarding school desegregation finding them "not applicable here." (Id.)

The district court is correct. The factual patterns of school desegregation cases bear little resemblance to the facts alleged here. Moreover, Plaintiffs do not seek to eliminate the "vestige" of past discrimination by asking for the desegregation of Scarboro. *See Con-Defs.' Ball Br.* at 20.

"Rather, [they] are seeking remedies for potential personal injuries and property damage relating to alleged exposure to Oak Ridge emissions."[8]  *Id.* at 20-21.  As Contractor-Defendants correctly explain:

> [T]he fact that [Plaintiffs'] alleged personal injuries and property damage might not have occurred (or might not have been so serious) *but for* the racial discrimination that led to the establishment of Scarboro in the first instance does not mean that the discrimination was the *proximate cause* of those injuries and that damage.  The concept of the "vestiges" of discrimination has never been stretched so far as to encompass anything bad that happens to someone that might not have happened but for racial segregation.  Under [P]laintiffs' logic, anything bad that happens as a result of Scarboro's location can be deemed a "vestige" of discrimination, since Scarboro itself would not exist but for discrimination.

*Id.* at 21.  It would indeed be a stretch to rely on the school desegregation cases to require Contractor-Defendants to eliminate any lingering effects of past governmental discrimination by paying for cleanup and medical monitoring.

The affirmative action cases Plaintiffs reference are similarly not dispositive.  Those cases stand for the proposition that affirmative action is not prohibited by the Constitution or the federal civil rights statutes.  *See Con-Defs.' Ball Br.* at 26-27.  These cases do not, however, go as far as to interpret the Constitution and the federal civil rights statutes as mandating government contractors to remedy past discrimination.  That is, contractors have no affirmative duty to eliminate current effects of past discrimination by governmental entities.  Neither do the government officials

---

have any such duty under the school desegregation and affirmative discrimination cases.

On the issue of affirmative duty, the case Plaintiffs rely on is distinguishable.  In *Hills v. Gautreaux*, the Supreme Court sustained "[a]n order directing HUD to use its discretion under the various federal housing programs to foster projects located in white areas of the Chicago housing market," finding that such an order would be "consistent with and supportive of well-established federal housing policy." 425 U.S. 284, 301 (1976).  HUD was ordered to remedy its own "wrong" of "confin[ing black tenants] to segregated public housing."  *Id.* at 299.  In this case, there is no allegation here that Contractor-Defendants initiated the segregation.

Accordingly, we find that neither the United States Constitution nor federal civil rights statutes afford the relief Plaintiffs ask.[9]

### C.  Class certification.

Plaintiffs next challenge the district court's denial of their class action certification motion.  In *Heiser*, Plaintiffs sought to certify as a Rule 23(b)(2) or Rule 23(b)(3) class:

> [P]ersons who lived in Oak Ridge, Tennessee, or otherwise resided in a nearby geographic area under the influence of the Defendants from 1943 to the present who have not yet contracted thyroid cancer but who have been exposed and put at risk by Defendants' act.

In *Ball*, Plaintiffs sought to certify as a Rule 23(b)(2) class:

---

[8] *See supra* note 1, regarding the remedy the *Ball* Plaintiffs are now seeking.

[9] Because we find the *Ball* Plaintiffs' civil rights claims without merit in any event, we need not reach the issue of which statute of limitations applies to the claims: the four-year statute of limitations of 28 U.S.C. § 1658, the one-year Tennessee statute, or another statute.

[A]ll individuals of African American descent who currently live in and/or currently own property in Scarboro and/or once lived in the Scarboro community and continue to frequently visit the Scarboro community.

(JA 203.) The district court first emphasized that class action certification is generally not appropriate in mass tort cases. The district court further denied the motion because it found that Plaintiffs failed to show commonality and typicality of claims, and failed to meet the adequate representation requirement under Fed. R. Civ. P. 23(a).[10]

Plaintiffs charge that the district court abused its discretion when it ignored "five separate sworn affidavits or declarations submitted" in support of their class certification motion. *Pls.' Heiser Br.* at 57. Plaintiffs further charge that the district court abused its discretion by treating the *Ball* Plaintiffs as a subclass of the *Heiser* Plaintiffs because, where race discrimination is alleged and injunctive relief is sought, class

---

[10]Rule 23(a) reads as follows:
Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Moreover, an "action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

. . .
(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief, or corresponding declaratory relief with respect to the class as a whole . . . ."

Fed. R. Civ. P. 23(b)(2).

certification is appropriate. *See Pls.' Ball Br.* at 53. Plaintiffs also challenge the district court's focus on individualized issues of proof with respect to commonality because they assert that the predominance analysis is inappropriate in analyzing commonality. *See id.* at 56. Plaintiffs explain that "[i]f the issue of liability is common to all class members then Rule 23(a)(2) commonality and Rule 23(a)(3)'s typicality requirements are satisfied." *Id.* at 57 (citing *Mayer v. Mylod*, 988 F.2d 635, 640 (6th Cir. 1993)). Plaintiffs identify the commonality issue as Defendants' obligation to remedy present discriminatory effects of past discrimination, and the typicality issue as Defendants' same unlawful conduct being directed at both Plaintiffs and the other members of the putative class. *See id.* at 54, 59.

Contractor-Defendants claim that the *Ball* case "*is* essentially the *Heiser* case, dressed up as a civil rights case." *Con-Defs.' Ball Br.* at 32 (emphasis in the original). Contractor-Defendants maintain that the true remedy sought here is compensation for personal injury, property damage, and medical monitoring, all of which are individual remedies. *See id.* at 36.

As to the proposed class in *Heiser*, the district court found that the commonality requirement is not satisfied because "there are multiple issues not common to all class members." (JA 77-78.) The district court further found that the individual Plaintiffs' claims were not typical of the claims of the class as a whole because "many of the class members were not even living in Oak Ridge in the 1950s, which is when the most significant emissions complained of occurred." (JA 78.) For similar reasons, the district court also found that Plaintiffs were not adequate representatives of the class.

As to the proposed class in *Ball*, the district court observed:

Even if it is assumed there are common issues with regard to *de jure* segregation and whether vestiges of that segregation remain in Scarboro, those questions do not predominate over the innumerable individualized questions that would exist with respect to each plaintiff. Each member of the proposed class lived in Scarboro for a discrete period of time and was exposed to mercury or other toxins in a discrete way. Some may have lived there for fifty or more years and some for a week or less. Some were there in the late 1950s when emissions were greatest and some were not. A few may have consumed milk from a backyard farm animal in the 1950s, most did not. As in *Heiser*, each individual plaintiff, if he or she has a claim, has a highly individualized claim based on his or her total exposure time, exposure period, medical history, diet, sex, age, and a myriad of other factors. The court finds that the individualized issues far outweigh any common ones.

(JA 80-81.) The district court then pointed to differences among the named *Ball* Plaintiffs, such as the duration of time they lived in Scarboro or their property ownership. (JA 81.) The district court opined that, therefore, "there is no 'typical' Scarboro resident for purposes of Rule 23." Finally, the district court noted that the proposed class in *Ball*, as in *Heiser*, was too "vague." (JA 82.)

The district court's decision to deny class certification is reviewed for abuse of discretion. *See Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998) (*en banc*). The district court must "rigorously" analyze the requirements of Rule 23. *See id.* (citation omitted). "No class that fails to satisfy all four of the prerequisites of Rule 23(a) may be certified, and each class meeting those prerequisites must also

pass at least one of the tests set forth in Rule 23(b)."[11]  *Id.* (citation omitted).

Here, the district court did not abuse its discretion in denying class certification. The district court analyzed the Rule 23(a) requirements in concluding that Plaintiffs did not have claims common and typical to the class. The district court was correct in treating the *Ball* plaintiffs as a subset of the *Heiser* plaintiffs because of the same underlying claim of environmental injury in both. The *Ball* case is "simply not a case about racial discrimination in the abstract, but a case alleging that racial discrimination caused environmental injuries." *Con-Defs.' Ball Br.* at 40. Even though liability issues may have been common to the putative class, by seeking medical monitoring and environmental cleanup of property, Plaintiffs have raised individualized issues. Each individual's claim was for that reason necessarily proportional to his or her exposure to toxic emissions or waste. Similarly, the *Heiser* Plaintiffs' claims depended on their period of residency in Oak Ridge and levels of exposure. Also, the "named plaintiffs who *already* have thyroid cancer have fundamentally different interests than those named and unnamed plaintiffs who do not." *Con-Defs.' Heiser Br.* at 47 (emphasis in the original). Indeed, the *Heiser* Plaintiffs who had thyroid cancer were not even members of the proposed class, which was defined as consisting of individuals who were at risk of developing the cancer.

Furthermore, Plaintiffs' reliance on *Sterling v. Velsicol Chemical Corporation*, 855 F.2d 1188, 1197 (6th Cir. 1988), is misplaced. In *Sterling*, this court observed that "the mere

---

[11]For that reason and contrary to Plaintiffs' assertion, the district court could not have certified the Rule 23(b)(2) class without first finding that all the requirements of Rule 23(a) have been satisfied. The corollary is that the district court need not have reached the Rule 23(b) issues after finding the requirements of Rule 23(a) have not been met.

fact that questions peculiar to each individual member of the class remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible." 855 F.2d at 1197. The court went on to say that "where the [one] defendant's liability can be determined on a class-wide basis because the cause of the disaster is a single course of conduct which is identical for each of the plaintiffs, a class action may be the best suited vehicle to resolve such a controversy." *Id.* Here, however, there are multiple Defendants with presumably differing liability levels, if any. Accordingly, there is no "single course of conduct." Therefore, *Sterling* is distinguishable on its facts. Moreover, *Sterling* affirmed the class action certification, emphasizing the district court's discretion in making such decisions.

Finally, the fact that the district court's discussions of the commonality and typicality issues were intertwined is not fatal. We have recognized that the "commonality and typicality requirements of Rule 23(a) tend to merge." *Rutherford v. City of Cleveland*, 137 F.3d 905, 909 (6th Cir. 1998). Plaintiffs additionally charge that the district court should not have used the term "predominance" found in Rule 23(b)(3) in its analysis of commonality and typicality.[12] However, "the predominance requirement of Rule 23(b)(3) [has been found] similar to the requirement of Rule 23(a)(3)." *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 623 n.18 (1997). As any claim the class may have had in common threatened to splinter into individualized claims, it was not

---

[12]According to Rule 23(b)(3), an "action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

. . .

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

error for the district court to refer to the fact that Plaintiffs' individualized claims predominated over their claims in common.

**D.  Sovereign immunity**.

Plaintiffs also challenge the grant of summary judgment as to Government-Defendants on the basis that Government-Defendants did not request that their motion be treated as a Rule 56 motion. *See Pls.' Ball Br.* at 23. Government-Defendants respond that the district court should have dismissed the case as against them for lack of subject matter jurisdiction. *See Gov-Defs.' Br.* at 12. Government-Defendants contend that because Secretary Abraham and Mr. Norton are sued in their official capacity as officers of a governmental agency, they are immune from suit, and that sovereign immunity has not been waived for any claim against them. *Id.* at 12-13.

This court reviews *de novo* determinations on questions of subject matter jurisdiction. *See Singleton v. United States*, 277 F.3d 864, 870 (6th Cir. 2002). Here, the district court did not rule on Government-Defendants' motion to dismiss. In granting the summary judgment motion in favor of all Defendants, the district court merely remarked that its ruling "pretermit[ed] other issues including those raised by the United States." (JA 89, 215.)

The district court should have explicitly dismissed Plaintiffs' claims against Government-Defendants. It is true that federal courts have jurisdiction to provide injunctive relief against unconstitutional actions by federal officials. *See Bell v. Hood*, 327 U.S. 678 (1946). However, the district court already ruled against Plaintiffs' civil rights claims. As explained above, no case cited mandates the remedy sought by Plaintiffs under the facts of this case. On the other hand, it is well established that the United States as a sovereign cannot be sued without its explicit consent. *See Hercules,*

*Inc. v. United States*, 516 U.S. 417, 422 (1996). Moreover, sovereign immunity is a defense in suits against government officials when sued in their official capacity. *See Kentucky v. Graham*, 473 U.S. 159, 166-67 (1985). Absent such consent, the district court should have dismissed the claims against Government-Defendants instead of including Government-Defendants' objections in its summary judgment ruling. Nevertheless, remand is unnecessary since the case is dismissed in any event against all Defendants.

## CONCLUSION

For all the reasons stated above, we **AFFIRM** the judgment of the district court.