MARK GOLDSMITH, District Judge,
concurring.
I concur with the majority opinion; I write separately, however, because I disagree with its analysis of equitable tolling of the statute of limitations. Specifically, I disagree with its conclusion that “there was local, widespread publicity surrounding LFUCG’s connection with Micro-City Government in 1997” sufficient to put Plaintiffs on constructive notice of their claims and stop any tolling of the statute of limitations sufficiently in advance of the filing of the claims so as to render them time-barred. The “widespread publicity” in question consists wholly of two short newspaper articles which make no mention of the sexual abuse that is central to this matter. I contend that these two articles, without more, are insufficient to stop the tolling of the statute of limitations. However, because I believe that Plaintiffs have not shown that the statute of limitations was initially tolled on a theory of fraudulent concealment, my disagreement does not cause me to part ways with the majority opinion’s ultimate conclusion that Plaintiffs’ claims are time-barred.
The “widespread publicity” referenced by the majority opinion is actually two newspaper articles, published in the Lexington Herald-Leader on August 29, 1997 and September 13, 1997. The articles concern a non-profit organization’s hesitancy to sell a historic black theater to the City because the organization questioned whether, in light of the City’s funding of Micro-City Government, the City was capable of acting in the best interests of the black community. See 8/29/97 article (App’x 381); 9/13/97 article (App’x 383). *23 The articles refer to accusations of “improper activity” at Micro-City Government, and they quote an individual stating that the “State Police and the Attorney General’s office are investigating allegations connected with Micro-City Government.” 8/29/97 article (internal quotation marks omitted).
The significant information from either article is the non-profit group’s statement that LFUCG’s attorneys “were arguably required by law to investigate these claims of improper activity by an individual who heads an organization so heavily funded by local funds for so many years.” Id. Notably, however, the articles do not mention allegations of sexual abuse by any Micro-City Government officials. A reader could easily have concluded that the vague references to “improper activity” meant actions of financial impropriety, or any number of other bad acts. And, critically, the articles do not say that LFUCG officials had knowledge of any abusive activities. Thus, the articles would not have informed Plaintiffs that LFUCG continued funding Micro-City Government after learning of sexual abuse by its director, Ronald Berry, a fact essential to Plaintiffs’ cause of action. As the analysis of Kentucky case law that follows demonstrates, this deficiency means that the newspaper articles did not suspend tolling of the statute of limitations. Accordingly, the limited publicity present in our case was not sufficient to trigger resumption of the running of the statute of limitations.[1]
In Roman Catholic Diocese of Covington v. Secter, 966 S.W.2d 286 (Ky.App.1998), the Kentucky Court of Appeals concluded that the claim was not time-barred, notwithstanding the plaintiffs failure to file the action within one year of reaching majority age. See id. at 290. Secter was sexually abused in the 1970s by a guidance counselor at his high school, which was operated by the Diocese. In 1992, Secter learned from television reports that the counselor had abused other students. A criminal investigation and civil suits (including Secter’s, filed in 1993) followed, *24 and during discovery the Diocese turned over secret archive files revealing that the Diocese had received reports of the counselor’s sexual abuse before Secter had attended the school. The trial court denied motions for directed verdicts on the statute-of-limitations issue, and the jury returned a verdict for Secter on his claim for negligent hiring, supervising, or retaining the counselor. Id. at 288. On appeal, the state court of appeals held that the action was not time-barred, reasoning that the Diocese had clearly “obstructed” Secter in the prosecution of his action, within the meaning of Ky.Rev.Stat. Ann. Sec. 418.190(2), by continuing to conceal reports of the counselor’s acts of abuse. 966 S.W.2d at 290. It also concluded that the concealment continued until the point when there were television reports regarding abuse of other students by the counsel- or, which triggered Secter’s suppressed memories that he had been -victimized, as well. Only at that time was it revealed that the Diocese had prior knowledge of the counselor’s “propensities,” leading the court to conclude that, at that point, Secter had reason to know of his potential cause of action against the Diocese. Id. Thus, tolling was ended when publicity put Sec-ter on notice of facts linking a potential defendant to the acts of abuse.
The same principle is evident in Azerot v. Roman Catholic Bishop of Louisville, No. 2004-CA-000666-MR, 2005 WL 2899483 (Ky.Ct.App. Nov. 4, 2005), where the court affirmed the lower court’s dismissal on statute-of-limitations grounds. The plaintiff was allegedly abused by his parish priest in the early 1980s. Bringing suit in May 2003 for negligent hiring and for breach of fiduciary duty for failing to protect him from the abusive priest, the plaintiff alleged that he first learned through a conversation with his mother after June 2002 that the Archdiocese “had been accused in numerous lawsuits of engaging in a pattern of conduct designed to cover up abusive conduct committed by its priests.” Id. at *1. Both the lower court and the Kentucky Court of Appeals found the action time-barred based on suspension of tolling in April 2002 because: (i) in that month a local newspaper printed two articles “regarding the Archdiocese’s alleged long-standing practice of concealing known incidents of sexual abuse of students by priests,” (ii) several lawsuits against the Archdiocese were filed beginning in April 2002, and (iii) “pervasive new reporting” in newspaper radio, and television ensued immediately. Id. at *2. Again, it was widespread reporting of facts tying the potential defendant to acts of abuse that put the plaintiff on notice of his claim against a particular defendant and suspended tolling.
In Moyers v. Roman Catholic Bishop of Louisville, No. 2004-CA-001886-MR, 2005 WL 3116116 (Ky.Ct.App. Nov. 23, 2005), the court considered nearly the same circumstances as in Azerot, related to the same defendant. The plaintiff experienced abuse in 1990, stated that she learned of the church’s cover-up in the summer of 2002, and filed suit in May 13, 2003. The court described the April 2002 newspaper articles mentioned in Azerot, noted that six additional articles describing the lawsuits against the same priest were published before May 13, 2002, and that “other news reports” had occurred on local television and radio. Id. at *1. The court assumed that the tolling provision in Ky.Rev.Stat. Ann. § 413.190(2) applied, but concluded that, even so, the plaintiff would only have been entitled to tolling until sometime in April 2002 because of the “widespread publicity” of “the abuse scandal.” Id. at *4-5. Accordingly, the court affirmed the trial court’s award of summary judgment to the defendant based on the statute of limitations.
*25 In Fayette County Board of Education. v. Maner, No. 2007-CA-002243-MR, 2009 WL 1423966 (Ky.Ct.App. May 22, 2009), the plaintiff suffered pervasive sexual abuse by several employees of the school district in the late 1970s and early 1980s. In August 2003, she sued under § 1983, inter alia, for substantive due process violations. Citing Seder, the court concluded that school officials’ failure to report the abuse (the exception to Ky. Rev. Stat. Ann. § 413.190’s affirmative-act requirement) constituted concealment under the tolling statute. Id. at *12.
Notably, the court rejected the school district’s argument that, because the plaintiff knew of her own mother’s complaint related to the abuse to the superintendent around the time of the abuse, the plaintiff was obligated to sue within a year of reaching the age of majority. Id. The court explained that it was necessary for the plaintiff to know about the pattern of abuse by school district employees in order for the statute of limitations to run on her § 1983 suit:
Other than Lynne’s knowledge of her own sexual abuse and her mother’s reporting of it, the Board does not point the Court to any evidence establishing that Lynne knew or had reason to know of a pattern of sexual abuse of other students, including the reports made to Dr. Potts which may have consisted of monthly complaints of inappropriate contact between teachers and students; the failure to report any of these complaints; and the concealment of his failure to report her mother’s complaint prior to filing her case. Thus, under Seder and Lynne’s lack of notice of many of the facts necessary for a 42 U.S.C. § 1983 cause of action, Lynne[ ] has presented sufficient evidence of concealment to justify tolling the statute of limitations in this matter.
Id. at *12-14. Thus the lack of notice of the key fact of pattern of abuse led the court to conclude that tolling was not suspended.
The last case is Greywolf v. Roman Catholic Diocese of Covington, No. 2010-CA-000814-MR, 2011 WL 3361342 (Ky.Ct.App. Aug. 5, 2011), in which the plaintiff was allegedly molested by a priest in the rectory of his church in the mid-1970s. The plaintiff filed suit in May 2002, alleging claims for molestation, battery, negligent supervision and retention, breach of fiduciary duty, and fraudulent misrepresentation against the Diocese. Id. at *1. The court concluded that the Diocese concealed its knowledge of the priest’s behavior in 1975 when it received a report of numerous instances of abuse, and that the plaintiff was entitled to tolling from that point. Id. But the court found that the tolling stopped in 1993 with the “extensive publicity” in Lexington (the plaintiff’s city) concerning a sexual abuse scandal by another priest in the same Diocese at the same church at which the plaintiff was abused. Id. The court also noted the “substantial coverage throughout Kentucky and nationwide concerning sexual abuse scandals in the Catholic Church,” and the fact that the Lexington paper had covered the civil suits of the victims of another priest in the same Diocese who had sexually abused students in a Diocese-run school. Id.
The Kentucky cases stand for the proposition that tolling ends when publicity puts a plaintiff on notice of facts that tie the potential defendant to the essential acts comprising the actionable wrong. In our case, however, the publicity relied on by the majority opinion does not tie LFUCG to any actionable wrong. Notice that there were investigations into unspecified “improper activities” at Micro-City Government did not put Plaintiffs on notice *26 that LFUCG had any awareness of sexual abuse. Therefore, if it is assumed that the statute of limitations was initially tolled, the publicity in August and September 1997 did not terminate that tolling.
The majority opinion contends that there was “widespread publicity surrounding LFUCG’s connection with Micro-City Government in 1997.” Although the opinion does not spell out what this “connection” was, it may be referring to the funding relationship between LFUCG and Micro-City Government. However, the potential basis for a § 1988 suit against LFUCG is not that it had a mere “connection” to Micro-City Government, or even that it funded the organization— facts that no one argues were concealed.[2] Nor was the potential basis for suit that LFUCG funded an organization whose leader was sexually abusive. The potential basis for the § 1983 claim against LFUCG was that it facilitated Berry’s sexually abusive activities by continuing to fund the Micro-City Government program after learning about those activities. The two newspaper articles fall well short of giving Plaintiffs notice of that alleged fact.
Rather than conclude that tolling did terminate, however, I conclude that it never was triggered. It is well established that, in order to be entitled to fraudulent-concealment tolling, a plaintiff must show that the defendants concealed, either by an affirmative act, or by failing to act in the face of a legal duty. Emberton v. GMRI, Inc., 299 S.W.3d 565, 573-74 (Ky.2009). The plaintiff bears the burden of establishing facts that would entitle him or her to tolling. Se. Ky. Baptist Hosp., Inc. v. Gaylor, 756 S.W.2d 467, 469 (Ky.1988).
With regard to the first prong, concealment by affirmative act, a Kentucky statute provides that “a resident of [Kentucky] who absconds or conceals himself ‘or by any other indirect means obstructs the prosecution of the action’ shall not have benefit of the statute of limitation so long as the obstruction continues.” Munday v. Mayfair Diagnostic Lab., 831 S.W.2d 912, 914 (Ky.1992) (citing Ky.Rev.Stat. Ann. § 413.190(2)). As the Emberton court explained,
in order to toll the limitations period, the concealment envisioned by KRS 413.190(2) must represent an “affirmative act” and “cannot be assumed” — i.e., it must be active, not passive. Id.; accord Munday, 831 S.W.2d at 915. For this reason, we have held that the statute’s reference to “other indirect means” of obstruction of an action still requires an act or conduct that remains “affirmatively fraudulent”: “The ‘other indirect means’ of obstruction ... must consist of some act or conduct which in point of fact misleads or deceives plaintiff and obstructs or prevents him from instituting his suit while he may do so.” Adams [v. Ison], 249 S.W.2d [791] at 792 [ (Ky.1952) ] (citing Reuff-Griffin Decorating Co. v. Wilkes, 173 Ky. 566, 191 S.W. 443, 444 (Ky.1917)); accord Gailor v. Alsabi, 990 S.W.2d 597, 603 (Ky.1999). As a result, “mere silence ... is insufficient” and cannot support its application. Gailor, 990 S.W.2d at 603....
299 S.W.3d at 573.
Plaintiffs have not established that LFUCG officials made any affirmative misrepresentation. Although they assert in their brief on appeal that there are “mountains of evidence that demonstrated that various individuals had reported Berry’s inappropriate activities to the LFUCG Defendants,” they offer no record citations *27 to substantiate. Nor do they explain what affirmative act of concealment Defendants committed after receiving the reports of Berry’s activities. The failure to support an assertion with record evidence is fatal. See, e.g., Steele v. City of Cleveland, 375 Fed.Appx. 536, 541 (6th Cir.2010).
Similarly, Plaintiffs have not established that Defendants failed to act in the face of a legal duty. A Kentucky statute requires that “[a]ll individuals with firsthand knowledge or reasonable cause to believe that a child is abused have a mandatory duty to report the abuse.” Commonwealth v. Allen, 980 S.W.2d 278, 281 (Ky.1998) (citing Ky.Rev.Stat. § 620.030(1)). The Kentucky Supreme Court has said of the statute that “[a]ll individuals with firsthand knowledge or reasonable cause to believe that a child is abused have a mandatory duty to report the abuse.” See Allen, 980 S.W.2d at 281. The district court rejected the argument that Defendants had a duty to report pursuant to the statute, concluding that it did “not believe the evidence shows that the information conveyed to the LFUCG was so specific as to raise a duty to report under the statute at issue.” Opinion of 5/1/09 at 10-11 n. 8 (App’x 220-21 n. 8). Before this Court, Plaintiffs offer only the non-specific “mountain of evidence” statement. Plaintiffs fail to identify any specific evidence that relevant individuals received “firsthand knowledge” or information specific enough to have “reasonable cause to believe that a child is abused.” See Allen, 980 S.W.2d at 281. Thus, Plaintiffs have not established that a duty was triggered under the statute.
Because Plaintiffs fail to establish that there was evidence before the district court creating at least a question of fact regarding the initial tolling of the statute of limitations, I would conclude that their claims were properly found to be time-barred. Accordingly, I concur in the majority’s ultimate conclusion.

. Even setting aside the limited nature of the content of the articles, it is troubling to categorize two short newspaper articles as amounting to "widespread” publicity. Kentucky case law does not explicitly set out a standard for what is sufficient. However, at least one unpublished decision refers to the Sixth Circuit's standard in concluding that the plaintiff should be charged with knowledge due to widespread publicity. See Moyers v. Roman Catholic Bishop of Louisville, No. 2004-CA-001886-MR, 2005 WL 3116116, at *5 n. 9 (Ky.Ct.App. Nov. 23, 2005) (citing Ball v. Union Carbide Corp., 385 F.3d 713, 722 (6th Cir.2004)). As this Court stated in Ball:
[t]he rule in this Circuit is that "[w]here events receive ... widespread publicity, plaintiffs may be charged with knowledge of their occurrence." Hughes v. Vanderbilt Univ., 215 F.3d 543, 548 (6th Cir.2000) (quotation omitted). A plaintiff is charged with constructive knowledge even when she claims that “she did not hear or read any of the media reports.” Hughes, 215 F.3d at 548. "The relevant inquiry in [such] cases ... is an objective one." Id. (citations omitted).... [T]he question is whether a typical person would have been aware....
385 F.3d at 722 (footnotes omitted). In Ball, the court applied the standard to find the “widespread publicity” standard to be met where "local and national news media repeatedly covered the issue, and [a government-created health panel] publicized the progression of its study since its inception in 1992 and issued its preliminary results throughout." Id.; see also id. (in light of the media and ongoing government reports, "[p]laintiffs should have been aware of a potential personal injury claim connected to Oak Ridge emissions or releases in 1998 or 1999 at the latest, when the [panel’s] preliminary reports became available”).
Given the limited nature of the media coverage here — only two short newspaper articles — I cannot conclude that the publicity here was sufficiently widespread to have put Plaintiffs on notice of anything, no matter how the content of the articles is interpreted.

. As LFUCG’s brief points out, “LFUCG's funding of MCG was public knowledge long before [the summer of 1997].” Second Br. of Appellees at 37.